GRACEY, judge:
The claimants insured the Harman Church of the Brethren located in Harman, Randolph County, West Virginia. On or about October 26, 1977, two juveniles who were being confined at the West Virginia Children's Home in Elkins, West Virginia, left the Home to run away. While travelling to Bluefield, West Virginia, they entered the Harman Church of the Brethren and allegedly started a fire which destroyed the Church. Claimants filed this claim for the’loss of'the Church in the amount of $30,648.11.
At the hearing, a motion to amend the style of the claim in the name of the Department of Human Services as one of the respondents was sustained by the Court. The claim was submitted upon the plead- ings and two depositions.
The^deposition of Robert Byrd, one of the juveniles involved in the incident, revealed that he and two other juveniles, all of whom were *112 wards of the West Virginia Children's Home in Elkins, left the Home on the date in question riding bicycles which one of the juveniles had taken from a yard. They rode the bicycles out of Elkins. One of the juveniles separated to proceed to Huttonsville, West Virginia while Robert Byrd and the other juvenile proceeded on another road with the intentions of travelling to Bluefield, West Virginia. The two boys abandoned the bicycles and hitchhiked with a trucker who dropped them off on a road about one mile from the Church. At the time, the boys did not know where they were so they walked along the road. They came upon the Church and "went in the church for the collection money." The boys lit candles in the Church as it was dark. At this point, Robert Byrd stated that he does not remember what happened until he was back on the road, heard fire engines, and looked back to see "black and red smoke all over the place." He could not remember the facts surrounding the cause of the fire. The boys were then picked up by a woman from the West Virginia Children's Home. She took the boys back to the Home.
Robert Byrd indicated that he had been confined at the Children's Home for approximately two and one-half weeks prior to the date of the incident. Previous to this confinement, he had been treated while a patient of Lakin State Hospital during the spring or summer, 1977. He stated that he went freely to and from the Children's Home as did the other children. The personnel at the Home did not prevent the children from coming and going.
The testimony of Audrey K. Byrd revealed that her son, Robert Byrd, was first placed in Lakin State Hospital by the Mercer County Circuit Court on Arson 1 charges. He was released to his parents and the Department of Welfare. He was then placed in the West Virginia Children's Home at Elkins. She had not visited the Home until after the Church was burned.
Claimants allege that the respondents negligently and recklessly placed Robert C. Byrd into an institution which did not have the proper facilities to prevent escape and recurrence of past conduct.
The record in this claim does not substantiate the allegation of knowledge on the part of the personnel in charge of the West Virginia Children's Home of any propensity on the part of Robert to set fires or which would alert them to any behavior different from the other children confined at the Home. There is, in fact, no proof as to how the Church burned down or who set the fire as the testimony of Robert Byrd is that he did not set the fire nor did he know how the fire started.
This Court has previously denied a claim wherein juveniles burned a barn while wards of Sugar Creek Children's Center as the record was devoid of any negligence on the part of the respondent. Stemple vs. Dept. of Welfare, 13 Ct.Cl. 94 (1979). A complete review of case law in escape claims wherein property damage resulted from acts of the escapees is provided in the opinion of Tyre vs. Dept. of Corrections, 12 Ct.Cl. 263 (1979) . This opinion concludes that each claim must be taken on its own set of facts. The facts herein do not reveal a basis upon which the Court may find negligence on the part of the respondents.
*113 In view of the above, the Court is of the opinion to and does disallow the claim.
Claim disallowed.